**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**IN RE: MARIE KING, DEBTOR** **CASE NO.: 4:19-bk-16475**
**CHAPTER 13**

# MEMORANDUM OPINION AND ORDER

REI Nation, LLC ("REI") filed its *Motion for Relief from Automatic Stay (Real Property)* ("Motion") on February 26, 2020, at docket entry 60. The debtor, Marie King ("debtor"), filed her *Response to Motion for Relief from Automatic Stay* ("Response") at docket entry 75 on April 6, 2020. The court heard the Motion and Response on April 10, 2020. REI appeared solely through its counsel; the debtor appeared personally and through her counsel. At the conclusion of the hearing, the court took the matter under advisement. For the reasons stated herein, the relief requested in the Motion is granted.

## I. Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014.

## II. Pleadings

In most home foreclosure sales, the foreclosing lender is typically the successful bidder. A foreclosure sale interrupted by a Chapter 13 bankruptcy filing generates a question between the borrower and its lender/mortgagee whether (1) the lender/mortgagee now owns the property or whether (2) the borrower still enjoys an interest in their homestead sufficient to allow inclusion in their plan and payment pursuant to the original note, mortgage, and Bankruptcy Code.

Atypically, REI is in the incongruous circumstance where it is not the lender/mortgagee but rather a third-party purchaser at the sale who enjoys no prior or present contractual relationship with the debtor and to whom no benefit would accrue were the debtor to provide for the foreclosing lender's note and mortgage in her plan. Capsulated, REI purchased the debtor's home at a post-petition statutory foreclosure sale while the debtor did not enjoy the benefits of the automatic stay. For reasons not evident in this record, REI did not take full advantage of the absent stay and failed to record the sale deed before this court's post-petition imposition of the stay. Accordingly, REI framed its bases for relief from stay as follows:

> 12. Cause exists for relief from the automatic stay for the following reasons:
>
> (a) Pursuant to § 362(d)(1), REI's interest in the Property is not adequately protected.
> (b) Pursuant to § 362(d)(2)(A), the Debtor(s) do not have any equity in the Property.
> (c) Pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

(Motion for Relief from Automatic Stay (Real Property), Feb. 26, 2020, ECF No. 60, at ¶ 12.)

REI framed its requested relief in pertinent part as:

> A. Relief from the stay for all purposes allowed by applicable law allowing REI (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies, including but not limited to, obtaining possession of the Property[.]

(Mot., at 4.)

In her Response, the debtor raised the predicate question left unstated, but implicit, in the Motion. That is, whether REI's failure to record the Mortgagee's Deed (defined below) means that the sale was incomplete; thus, the debtor still has a legal and equitable interest that may be appropriately treated in her plan. REI's Motion presumes, and REI argued at trial, that the sale was complete, and it need only record the Mortgagee's Deed to obtain possession. The debtor, in

her Response, argues that she still had a legal and equitable interest in her homestead on the date of filing because REI "failed to take the necessary steps to obtain possession by not recording the Mortgagee's Deed as required by ARK. CODE. ANN. § 18-50-107(f)(2)(A). *See also* Judge Ben Barry's opinion in In re Foriest and Kathy McAdoo, Bankr W.D. Ark., Case No. 15-72690 (November 21, 2016), citing In re Jenkins, 422 B.R. 181 (Bankr. E.D. Ark. 2010)." (Response to Motion for Relief from Automatic Stay, Apr. 6, 2020, ECF No. 75, at ¶ 6.) For that reason and other alleged irregularities, the debtor concludes, "[t]herefore, there is reason to believe the conveyance was not effective and the sale should be set aside. Pursuant to Section 1322(c)(1) of the U.S. Bankruptcy Code, Debtor has a federal right to cure the home mortgage default and therefore would further have a legal or equitable interest in the property." (Resp., at ¶ 8.)

Accordingly, two issues require resolution. Initially, whether the foreclosure sale was sufficiently complete to render section 1322(c)(1) unavailing. If not, the question then becomes whether to lift the stay regardless pursuant to section 362(d). The facts and law compel the conclusion that (1) the debtor could avail herself of the curative provisions of section 1322(c) as the property was not sold at foreclosure, but that (2) REI is entitled to have the automatic stay lifted for cause based on a lack of adequate protection.

## III. Facts

REI's entire case rested on stipulated facts as follows:

1. FCI Lender Services, Inc. as servicer for Wilmington Savings Fund Society, FBS, d/b/a Christiana Trust, not individually but as a trustee for Hilldale Trust, (hereinafter, "FCI") was the servicer of a promissory note and mortgage originally executed by the Debtor on December 21, 2006. The mortgage encumbered the real property more commonly known as 807 North Shackleford Road, Little Rock, AR 72211-2538 (hereinafter, the "Property").
2. As a result of a default on the terms of the Mortgage, FCI initiated a statutory foreclosure action to sell the Property.

3. Pursuant to Ark. Code Ann. § 18-50-107, the foreclosure sale was conducted on December 9, 2019 at the Pulaski County Courthouse, where REI was the high bidder in the amount of $93,000.00
4. On or about December 18, 2019, FCI delivered a Mortgagee's Deed conveying the Property to REI Nation, LLC. A copy of the *Mortgagee's Deed* is attached hereto as **Exhibit A** and is incorporated by reference herein. The Mortgage's Deed has not been recorded in the Pulaski County real property records.
5. Before the foreclosure sale, a petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on December 6, 2019.
6. Pursuant to 11 U.S.C. § 362(c)(4)(A)(i), the automatic stay did not go into effect upon the Debtor's filing of this current bankruptcy proceeding.
7. On December 6, 2019, the Debtor filed a motion to impose a stay as to all creditors.
8. On February 13, 2020, this Court granted Debtor's motion to impose stay pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. The Order provided that "the automatic stay shall be imposed as to all creditors and *shall be effective on the date of the entry of this order.*"
9. Debtor has included the Property into her Chapter 13 Plan, [and] continues to reside at the Property.

(Agreed Stipulated Facts in Relation to REI Nation's Motion for Relief From Automatic Stay (Real Property) and Debtor's Response, Apr. 10, 2020) (emphasis in original). Based on stipulation number 6, the court may infer that the debtor had two or more cases pending and dismissed within the year prior to the filing of her current Chapter 13 proceeding. Also, the court may reasonably infer that REI paid the purchase price since FCI delivered the Mortgagee's Deed.

The Mortgagee's Deed contains a number of recitations, including generally: the debtor defaulted in paying the underlying mortgage; a foreclosure sale was noticed and held pursuant to the provisions of ARK. CODE ANN. § 18–50–101 et seq.; the appointed trustee for purposes of that statute complied with various statutory requisites for the sale; REI paid $93,000 for the property; and, accordingly, the purpose of the deed was to convey title to REI. (Stip. Facts, at ¶ 4.)

The debtor and Brad Chafin ("Chafin"), an attorney for the Chapter 13 Trustee, testified in her case-in-chief. The debtor stated, in her unrefuted testimony, that she had lived in the home for fifteen years; she was working from home due to the current restrictions occasioned by the

Coronavirus pandemic; she was making her payments in her current bankruptcy proceeding; the property was worth more than $120,000, its approximate assessed value; she owed approximately $112,000; the mortgage payment was less than what she would pay for reasonably equivalent rental housing; and the property was also necessary for an effective reorganization. The debtor also intimated that she did not receive sufficient notice of the foreclosure sale and that other irregularities might exist. She did not affirmatively attach any of those irregularities to REI. REI did not cross-examine or elicit any testimony from the debtor.

Chafin testified that the debtor was making her scheduled preconfirmation payments to the Chapter 13 trustee's office. The Chapter 13 trustee's printout on the debtor's case does not reflect an appearance or claim for REI on its "Claims Listing." The printout lists two references to Wilmington Savings Fund, one for the ongoing mortgage and one for prepetition arrearages. The ongoing mortgage payment is listed at $761, which is slightly higher than the debtor's testimony of $745 a month. The printout contains two unexplained numbers in the prepetition arrearage category—$152.20 and $9,132.00. (Debtor's Ex. 2.)

## IV. Analysis

### A. 11 U.S.C. § 1322

Based on these facts, two issues require resolution. Initially, whether the foreclosure sale was sufficiently complete to render section 1322(c)(1) unavailing. If not, the question then becomes whether to lift the stay regardless pursuant to section 362(d).

Section 1322 of the Bankruptcy Code regulates the contents of a plan and provides that a debtor may not modify the rights of a secured creditor on the "debtor's principal residence," but may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending[.]" 11 U.S.C. § 1322(b)(2), (5) (2020). The pre-bankruptcy relationship

is contractual and generally formed by a promissory note and recorded mortgage on property owned by the debtor and used as his or her principal residence.

Prefiling, financial distress often results in defaults on the promissory note and commensurate foreclosure proceedings. A completed foreclosure is generally conclusive and divests a debtor of his or her property interest and, in turn, vests ownership in the successful purchaser at the foreclosure sale. In that instance, a debtor has no interest to list on his or her schedules or otherwise treat in a plan.

Equally, incomplete foreclosure proceedings can be interrupted by the filing of a bankruptcy petition and imposition of the automatic stay. Philosophically, the Code recognizes that home ownership and home lending are symbiotic and foundational and attempts to balance the interests of both, thus protecting the lenders while helping debtors retain ownership of their homes. Part of that philosophy is reflected in the Code's treatment of and the issues raised when a foreclosure is in process and the borrower files under Chapter 13. The Code attaches a consequence by providing the following in section 1322(c).

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law[.]

11 U.S.C. § 1322(c) (2020).

This analysis requires a determination of whether the debtor's homestead had been "sold at a foreclosure sale" to REI in the absence of recordation of the resulting Mortgagee's Deed. If not, then the debtor may treat her homestead debt and mortgage in her Chapter 13 plan. If "sold," the property belongs to REI, no stay attaches, and the debtor has no rights to treat the debt and retain the property in her plan.

1. Foreclosures in Arkansas

Mortgage holders in Arkansas have two options when foreclosing. First and more traditional is a judicial foreclosure that, abbreviated, involves a complaint in foreclosure, answer, trial, a foreclosure decree that includes a judgment for the debt and the appointment of a commissioner to sell the property on nonpayment, notice of foreclosure sale, a foreclosure sale at the county courthouse, a report of foreclosure sale, order approving report of foreclosure sale, commissioners deed to the successful bidder/purchaser, and order approving commissioners deed.

Second, a statutory foreclosure sale employs a more truncated, nonjudicial procedure with arguably a lesser imprimatur of judicial conclusiveness or finality. The Statutory Foreclosure Act of 1987 (the "Act") specifically outlines this nonjudicial foreclosure process. ARK. CODE ANN. 18-50-101, et. seq. Generally, attorneys-in-fact, specified trustees, or categories of financial institutions may commence non-judicial foreclosures. ARK. CODE. ANN. § 18-50-102 (2020). The "[c]onditions to exercise of power of sale" are specifically enumerated and include notice to the mortgagor, copies of the debt and security instruments, and specifics concerning the alleged default. ARK. CODE. ANN. § 18-50-103 (2020). Thereafter, the Act sets forth a number of prerequisites for a foreclosure sale that involve principally filing for record in the county real estate records a "notice of default and intention to sell" as well as various certifications, information concerning the sale, warning language, and service of the notice of default and intention to sell. ARK. CODE. ANN. § 18-50-104 (2020). Notice of the sale is required to be published via newspaper publication, posting at the courthouse, and through the internet. ARK. CODE. ANN. § 18-50-105 (2020). The mortgagee or trustee must, before conducting the sale, file "for record with the recorder of the county in which the property is situated" an "affidavit of mailing and publication of the notice of default and intention to sell." ARK. CODE. ANN. § 18-50-106 (2020). Thereafter,

the sale must be conducted on the mortgaged property or the front door of the county courthouse according to various specifically enumerated terms. ARK. CODE. ANN. § 18-50-107 (2020). Further, the Act provides that "[t]he sale is concluded when the highest bid is accepted by the person conducting the sale." ARK. CODE. ANN. § 18-50-107(d).

Under the heading "Effect on certain persons," the Act provides, "[a] sale made by a mortgagee or trustee shall foreclose and terminate all interest in the trust property of all persons to whom notice is given under § 18–50–104 [which includes the mortgagor] and of any other person claiming by, through, or under the person." ARK. CODE. ANN. § 18-50-108(a)(1) (2020)

"Within ten (10) days after the sale, the mortgagee or trustee shall execute and deliver" a trustee or mortgagee's deed (used interchangeably) to the buyer. ARK. CODE. ANN. § 18-50-107(e)(3). The buyer is entitled to immediate possession. ARK. CODE. ANN. § 18-50-107(f)(1) (2020). However, if refused,

> (f)(2)(A) Possession may be obtained by filing a complaint in the circuit court of the county in which the property is situated and attaching a copy of the *recorded trustee's or mortgagee's deed*, whereupon the purchaser shall be entitled to an ex parte writ of assistance.
>
> (B) Alternatively, the purchaser may bring an action for forcible entry and detainer under § 18-60-301 et seq.

ARK. CODE. ANN. § 18-50-107(f) (emphasis added).

Thus, a recorded deed is necessary when the mortgagor refuses possession. Additionally, the sale-related recitations on the mortgagee's deed *and its recordation* have specific and varying consequences with respect to both the mortgagee and the purchaser. Section 111 provides:

> (a)(1) The trustee's or mortgagee's deed shall contain recitals of compliance with the requirements of this chapter relating to the exercise of the power of sale and sale of the trust property, including recitals concerning mailing and publication of notice of default and intention to sell and the conduct of the sale.

> (2) *Upon the filing of the deed for record* with the recorder of the county in which the trust property is situated, the recitals shall be prima facie evidence of the truth of the matters set forth therein, *but the recitals shall be conclusive in favor of a purchaser for value in good faith relying upon them*.

ARK. CODE. ANN. § 18-50-111(a) (2020) (emphasis added). Recordation, not mere delivery, renders the recitals conclusive in favor of the good faith purchaser. ARK. CODE. ANN. § 18-50-111(a)(2).

Only after the sale is there any potential judicial involvement, which can take two forms. First, as outlined above is a writ of possession or assistance in obtaining possession of the property that the buyer may bring only after recording the deed. ARK. CODE. ANN. § 18-50-107(f). Second, if a balance is left over after application of the sale proceeds, the creditor and foreclosing party may file a complaint seeking a monetary judgment. ARK. CODE. ANN. § 18-50-112(a) (2020).

Additionally, the Act grants to the foreclosing party the right to set aside the sale at any time before delivery of the trustee or mortgagee's deed. ARK. CODE. ANN. § 18-50-116(e). Specifically, the Act provides as follows:

> (e)(1) At any time prior to the delivery of the trustee's or mortgagee's deed, the trustee or mortgagee shall be authorized to set aside a sale conducted pursuant to this chapter by declaring the sale null and void and returning the purchase price to the highest bidder without any further liability to the bidder.
>
> (2) In this event, the trustee or mortgagee shall file an affidavit declaring the sale null and void with the recorder of the county in which the trust property is located, and all terms and provisions of the mortgage or deed of trust shall be revived and reinstated as if no sale had occurred.

ARK. CODE. ANN. § 18-50-116(e).

Finally, the Act retains any claim the mortgagor has against the mortgagee for any irregularities in the sale but proscribes assertion of those claims against a "subsequent purchaser for value." ARK. CODE. ANN. § 18-50-116(d)(2).[1]

2. The Trilogy: *Jenkins*, *Asburn*, and *McAdoo*

Three bankruptcy court decisions in Arkansas inform this court's analysis and resolution of this issue. The first case is *In re Jenkins*, 422 B.R. 175 (Bankr. E.D. Ark. 2010). In *Jenkins*, Judge James G. Mixon dealt with a similar set of circumstances. CitiMortgage, the creditor, used the Act and was the successful purchaser at a foreclosure sale but did not record the trustee's deed[2] until after the debtor filed her Chapter 13. CitiMortgage argued that the sale was conclusive under the Act, citing section 18–50–107(d) to the effect that the sale under the Act is "final when the highest bid is accepted by the person conducting the sale." *Id.* at 180.[3]

---

[1] Nothing in this chapter shall be construed to:

> (2)(A) Impair the right of any person or entity to assert his or her legal and equitable rights in a court of competent jurisdiction.
> (B) However, a claim or defense of a person or entity asserting his or her or its legal and equitable rights shall be asserted before the sale or it is forever barred and terminated, except that the mortgagor may assert the following against either the mortgagee or trustee:
> (i) Fraud; or
> (ii) Failure to strictly comply with the provisions of this chapter, including without limitation subsection (c) of this section.
> (C)(i) The claims or defenses described in subdivision (d)(2)(B) of this section may not be asserted against a subsequent purchaser for value of the property.

ARK. CODE. ANN. § 18-50-116(d)(2).

[2] The Act considers trustee's deeds and mortgagee's deeds interchangeable. ARK. CODE. ANN. § 18-50-107(e).

[3] Section 18–50–107(d) uses the word "concluded" instead of "final."

The *Jenkins* court first recognized that section 1322(c) did not provide a conclusive guide in these circumstances, noting that courts still differed as to when in the foreclosure process the property was "sold."

> The more persuasive of these two competing interpretations is that the statutory language "sold at a foreclosure sale that is conducted in accordance with applicable non-bankruptcy law" is ambiguous. The term "foreclosure sale" could refer either to the foreclosure process under state law, which is conducted in numerous stages, or to the foreclosure auction. If Congress had intended to sever a debtor's ability to cure a delinquent mortgage on the date of the auction, which is typically only one step in the foreclosure sale process, it could have easily done so. One leading commentator has found significance in the fact that the statute does not pinpoint a specific event as a cut-off point of the debtor's cure rights. 8 Collier on Bankruptcy ¶ 1322.15 (Lawrence P. King et al. eds. 15th ed. rev. 1998) ("It may well be significant that Congress did not say that a debtor may cure 'until the sale,' or 'until the date of the foreclosure sale,' indicating that completion of the sale might be on a later date than the date of the auction").

*Id.* at 178.

The court went on to recognize that, notwithstanding section 107(d) of the Act, the sale itself is just part of the ongoing foreclosure process that contemplates thereafter payment, transfer of the deed, recording of the deed, and the necessity of a recorded deed to enforce possession. Also significant to the *Jenkins* court was that the Act permits the trustee, after the bidding, to cancel the sale at any time prior to delivery of the deed. "Thus, immediately after the auction, the successful bidder may not even have an enforceable right to purchase or to possess the property because of the Trustee's absolute right to cancel the sale." *Id.* at 181.

Judge Mixon concluded.

> Under the Foreclosure Act, the acceptance of the bid is, in fact, not the final act required by the state statute to sell the debtor's residence, and at the conclusion of the auction the seller is not even bound by contract to sell at some future date. Because other statutory requirements are yet to be accomplished, labeling the sale as "concluded" when the highest bid is accepted attributes a meaning to the word "sold" that is inconsistent with the common understanding of the word and will not satisfy the provisions of 11 U.S.C. § 1322(c)(1). *See Burgess v. United States,* 553 U.S. 124, 128 S.Ct. 1572, 170 L.Ed.2d 478 (2008) (holding that state statute

> classifying crime as misdemeanor punishable by a maximum two-year prison sentence is still a felony for purposes of federal law because of common understanding of the word "felony").
>
> The Court concludes that the debtor's principal residence is "sold" for purposes of Section 1322(c)(1) of the bankruptcy code when, under the Foreclosure Act, the consideration is paid and the Trustee's Deed is delivered to the purchaser so that the purchaser's rights cannot be unilaterally avoided and the purchaser has the right to legally enforceable possession. At that point, the debtor is no longer entitled to cure the default as permitted by section 1322(b)(2) of the bankruptcy code. Here, the stipulated facts are that the bankruptcy case was filed before the Trustee's Deed was recorded. Therefore, the Debtor may propose a plan to cure the default, and CitiMortgage has no right to relief from the stay.

*Id.* at 182. Thus, *Jenkins* conjoined as dispositive delivery and the right to enforce possession. The latter requires a recorded deed.

The second Arkansas bankruptcy case, *In re Ausburn*, 524 B.R. 816 (Bankr. E.D. Ark. 2015) involved this court. *Ausburn* examined the circumstance where a judicial foreclosure sale occurred in part post-petition but the debtors waived their rights of redemption and did not redeem their property within a ten-day grace period afforded in a consensual foreclosure decree.[4] The case called for an analysis of the interplay between a state court foreclosure procedure—in this instance judicial as opposed to statutory—redemption, and section 1322(c). As a predicate, this court stated.

> Before the adoption of (c)(1), "confusion [existed] as to when Chapter 13 debtors lost their right to cure and reinstate a home mortgage." *In re Beeman*, 235 B.R. 519, 524 (Bankr. D. N.H. 1999).
>
> . . . .
>
> Subsequently, Congress adopted subsection (c)(1) in 1994 "to resolve th[e] confusion and [to] create a uniform standard" as to when a debtor's right to cure terminated. *Id*. at 595 (citing *In re Crawford*, 232 B.R. 92, 95 (Bankr. N.D. Ohio 1999); *In re Tomlin*, 228 B.R. 916, 918 (Bankr. E.D. Ark. 1999)). With the addition of subsection (c)(1), a debtor can now cure a default on a home mortgage "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1). In applying this new federal standard, many courts have held that subsection 1322(c)(1) "altered the

---

[4] The parties in *Ausburn* did not litigate the issue of damages for the stay violation.

> equation, providing a supplemental, federal, right that enhances state law rights." *Stephens*, 221 B.R. at 293 (finding that subsection 1322(c)(1) "now grants debtors the opportunity to cure home mortgage defaults up to the foreclosure sale in a civil foreclosure action, whether or not state law principles would have extinguished the debtor's real property rights in the period preceding bankruptcy").

*Id.* at 821. This court in *Ausburn* concluded.

> In the present case, the addition of subsection 1322(c)(1) enhanced and expanded Chapter 13 debtors' state law property rights by creating a federal right to cure a default on a home mortgage "until such residence is sold at a foreclosure sale" "*[n]otwithstanding ... applicable nonbankruptcy law*[.]" 11 U.S.C. § 1322(c)(1) (emphasis added). Although FSB correctly asserts and the debtors concur that their statutory and equitable rights of redemption under Arkansas property law terminated prepetition, the debtors' federal right to cure the default on their home, pursuant to 11 U.S.C § 1322(c)(1), did not terminate until the property was "sold at a foreclosure sale." Further, in Arkansas, a foreclosure sale is not complete until confirmed by the court.

*Id.* at 823.

Completing the trilogy is Judge Ben Barry's decision in *McAdoo*. *In re Foriest and Kathy McAdoo*, Ch. 13 Case No. 5:15-bk-72690 (Bankr. W.D. Ark. Nov. 21, 2016.) The movant, who objected to the debtors' plan and sought to lift the stay, was both the seller and the purchaser in a foreclosure sale under the Act. The sale auction occurred prior to the debtors filing bankruptcy, and the trustee's deed from the sale was executed but not recorded.

The movants argued that the foreclosure sale was complete prior to the bankruptcy filing, and, under Arkansas law, the debtors lost their right of redemption when the property was sold at auction. Judge Barry stated.

> If the Court were to consider only Arkansas law, the movant may be correct. Arkansas law provides that a "sale" is defined as "the public auction conducted pursuant to § 18–50–107." ARK. CODE ANN. § 18-50-101(10). Under section 107, "[t]he sale is concluded when the highest bid is accepted by the person conducting the sale." ARK. CODE ANN. § 18-50-107(d).

*Id.* at *4.

But, applying section 1322(c) allowed Judge Barry to reject the movant's argument. Referencing both *Jenkins* and *Ausburn*, the *McAdoo* court determined that the property was not "sold" prior to the debtors' petition, stating:

> Under Arkansas law, as noted above, the sale is concluded when the highest bid is accepted by the person conducting the sale. This is typically referred to as the "gavel rule." *In re Ausburn*, 524 B.R. at 823; see also *In re Jenkins*, 422 B.R. 175, 177–78 (Bankr. E.D. Ark. 2010). Under the gavel rule, a debtor's right to cure is terminated when the gavel falls at the sale auction. *In re Ausburn*, 524 B.R. at 823. In contradiction to the gavel rule is the "sold rule." Under the sold rule, the debtor's right to cure is only terminated when the entire sales transaction is complete under state law. *Id.* In considering the expanded federal right to cure under § 1322(c)(1) and *notwithstanding applicable nonbankruptcy law*, the Court finds that the debtor's right to cure a default depends upon the date the foreclosure sale process was completed–the sold rule.

*Id*. at *6 (emphasis in original).

In reaching this conclusion, the *McAdoo* court attached significance to the trustee's right to set aside the sale after the bid but before the issuance of the deed and the fact that the purchaser could not enforce its right of immediate possession until it filed a complaint in state court with a copy of the recorded trustee's deed attached. Accordingly, Judge Barry concluded, "in the context of § 1322(c)(1), 'sold' means the date on which the property has been irrevocably transferred and the foreclosure process concluded. In so finding, the Court adopts Judge Mixon's reasoned opinion [in *Jenkins*] regarding the meaning of 'sold' in the context of § 1322(c)(1)." *Id.* at *7.

3. This Case: A Logical Extension of the Trilogy

Returning to the case at hand, the foreclosure sale and delivery of the Mortgagee's Deed occurred post-petition but unhindered by the automatic stay. Inexplicably, REI did not record the deed prior to this court's imposition of the automatic stay. This failure to record has consequences under section 1322(c). Stated simply, the foreclosed property is not "sold" at any interim point of

the process, including the auction or delivery of the resulting mortgagee's deed, *until the conclusion of the entire process*.

Merely accepting the highest bid may "conclude" a sale for purposes of Arkansas law but does not render the property "sold" for purposes of federal law pursuant to 11 U.S.C. § 1322(c). A number of reasons justify this conclusion.

First, and as the courts noted in *Jenkins* and *McAdoo*, the mortgagee/seller has an unequivocal right to set aside the sale after the bidding process. The unequivocal post-bidding right to set aside the sale is difficult to reconcile with the past tense implications of the word "sold."

Second, examining the process in context illustrates a complementary scheme that is not complete until recordation. Post-bidding, the trustee or mortgagee still has to execute and deliver a trustee or mortgagee's deed to the buyer within ten days. ARK. CODE ANN. § 18–50–107(e)(3). The buyer is entitled to immediate possession but, if refused, has to sue in circuit court and attach to its complaint "a copy of the *recorded* trustee's or mortgagee's deed, whereupon the purchaser shall be entitled to an ex parte writ of assistance." ARK. CODE ANN. § 18–50–107(f)(1), (2)(A) (emphasis added).

Third, repossession against a recalcitrant homeowner is not the only consequence of recordation. An equal if not greater benefit is conferred on the purchaser upon recordation. As a predicate, the Act retains any claim the grantor has against the mortgagee for any irregularities in the sale but proscribes assertion of those claims against a "subsequent purchaser for value."[5]

---

[5] The Act provides:

> (C)(i) The claims or defenses described in subdivision (d)(2)(B) of this section *may not be asserted against a subsequent purchaser for value* of the property.
> (ii) For purposes of this section, "purchaser for value" does not include the mortgagee or the trustee.

Commensurately, under the Act, the "mortgagee's deed shall contain recitals of compliance with the requirements of this chapter relating to the exercise of the power of sale and sale of the trust property[.]" ARK. CODE ANN. § 18–50–111(a)(1). Significantly, the recitations on the Mortgagee's Deed *and its recordation* have specific and varying consequences with respect to protecting the mortgagee and the purchaser. Section 111 goes on to provide:

> (a)(2) Upon the filing of the deed for record with the recorder of the county in which the trust property is situated, the recitals shall be prima facie evidence of the truth of the matters set forth therein, *but the recitals shall be conclusive in favor of a purchaser for value in good faith relying upon them*.

ARK. CODE ANN. § 18–50–111(a) (emphasis added).

The recitals essentially validate compliance with the process up to the execution of the trustee or mortgagee's deed. No court intervention or involvement, with commensurate protection, exists at this juncture. The recitals are merely prima facie evidence of the truth of the matters set forth therein with respect to the seller. But when, and only if, the deed is recorded the recitals are deemed "*conclusive* in favor of a purchaser for value in good faith relying upon them." ARK. CODE ANN. § 18–50–111 (emphasis added). Thus, it is the recording of the deed, not merely its issuance or delivery, that affords the good faith purchaser conclusive protection from any irregularities occasioned by the mortgagee or trustee in carrying out the foreclosure process. An unrecorded Mortgagee's Deed fully denies REI the benefit of conclusive recitals affirming the regularity of its purchase. Clearly, any purchaser, including REI, would want to avail itself of that protection and would be equally reluctant to assert that somehow the foreclosure sale was complete, concluded, or "sold" without it.

---

ARK. CODE ANN. § 18–50–116(d)(2)(C)(i)(emphasis added).

For these reasons, the property was not "sold," and the debtor may avail herself of the preemptive and additional opportunity to cure afforded by 11 U.S.C. § 1322(c). Thus, the analysis now becomes whether the stay should or should not be lifted regardless.

B. 11 U.S.C. § 362

The debtor's right to cure under section 1322(c) and commensurately treat her homestead in a plan is not dispositive, but merely a factor, in considering whether a lifting of the stay is appropriate pursuant to 11 U.S.C. § 362(d). REI raises two bases for lifting the stay. First, that the debtor does not have any equity in the property and that the property is not necessary for an effective reorganization. This basis fails in its proof, as the debtor testified to her benefit on both issues. REI neither elicited nor presented any contrary evidence.

The second basis requires more detailed consideration. Specifically, REI alleges that "cause" exists for relief from the automatic stay "[p]ursuant to § 362(d)(1), [as] REI's interest in the Property is not adequately protected." (Mot., at ¶ 12.)

The pertinent facts, as stipulated to by the parties and presented to the court by testimony and exhibits, are as follows. FCI served as a servicer for Wilmington Savings Fund Society, FBS, d.b.a. Christiana Trust (hereafter "Wilmington") not individually but as trustee for Hilldale Trust. FCI was a servicer of a promissory note and mortgage originally executed by the debtor on December 21, 2006. It is unclear whether Wilmington is the original payee/mortgagee or a successor. The debtor defaulted on the terms of the mortgage. FCI initiated a statutory foreclosure and conducted a sale on December 9, 2019. REI had the high bid of $93,000. FCI delivered the Mortgagee's Deed to REI on December 18, 2019. Because REI was the successful bidder and FCI delivered a Mortgagee's Deed, the court may reasonably infer that REI paid to FCI the purchase price. REI has not yet recorded the Mortgagee's Deed in the Pulaski County real estate records.

The debtor filed her Chapter 13 bankruptcy petition on December 6, 2019. The automatic stay did not go into effect pursuant to 11 U.S.C. § 362(c)(4)(A)(i). From that, the court can reasonably infer that this is the debtor's third bankruptcy proceeding extant in the year prior to December 6, 2019, with the first two having been dismissed. § 362(c)(4)(A)(i). The debtor has made her projected plan payments to the trustee since filing her current bankruptcy proceeding. REI has not filed a proof of claim in this case. Wilmington has filed a proof of claim in this case. The proof of claim asserts two prepetition arrearage figures—$152.20 and $9,132.00.

While sparse, these facts paint a very distinct picture. The creditor/mortgagee, be it Wilmington or a predecessor, has endured three bankruptcies in the space of thirteen months. During that time, the debtor became significantly past–due in her payments and accrued arrearages totaling $9284.20, which equates to approximately one year of missed payments at $745 a month. FCI, on Wilmington's behalf, initiated a statutory foreclosure. Subsequently, on December 6, 2019, the debtor filed her bankruptcy case. The automatic stay did not attach due to the debtor being a serial bankruptcy filer. FCI/Wilmington took advantage of that pause in the stay and continued exercising its legal foreclosure rights. REI was the high bidder at the auction with a bid of $93,000. Wilmington, the only creditor with a contractual relationship with the debtor, received from REI $93,000. REI, who now holds a delivered but unrecorded Mortgagee's Deed to the real property, has no contractual relationship with the debtor. The sale cannot be set aside as having violated the automatic stay as no stay was in effect. REI may have some subrogation, equitable, or other recognizable claims against either or both the debtor and FCI/Wilmington. Neither party put forth any evidence or testimony in this regard. There is no indication of any degree of certainty or success with respect to REI obtaining either the property or its $93,000. Further, the court has no evidence why REI did not equally take advantage of the pause before the court imposed the

stay to record the Mortgagee's Deed. The court will not, however, infer any good or bad intent other than the consequence outlined earlier in this opinion. Additionally, the record lacks testimony that would reflect that (1) REI was an agent, "straw man," co-conspirator, or wholly or partially owned entity held or associated with FCI such as would render this transaction questionable and potentially expose REI to any statutory or common law causes of action, or that (2) REI, if denied the benefit of its bargain would have adequate recourse in successfully pursuing FCI for repayment of its $93,000 or subrogation to its contractual relationship with the debtor. The court will not speculate in regard to any of the above.

At the "request of a party in interest," the court may grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" 11 U.S.C. § 362(d) (2020). The debtor has the burden of proof on the issue of adequate protection. 11 U.S.C. § 362(g) (2020). The debtor introduced no evidence on the issue of adequate protection generally or specifically tailored to any of the various methods of granting adequate protection outlined in the Code, including cash payments, an additional or replacement lien, or the "indubitable equivalent" as a substitute for or protection of REI's interest in the property. *See* 11 U.S.C. § 361. The record lacks any evidence reflecting how REI's interest in the property would be adequately protected other than by completion of its purchase.

On this basis, the automatic stay is terminated as to REI. REI may proceed with recording the Mortgagee's Deed and take such further steps as are necessary to complete the foreclosure process and take possession of the property.

## V. Conclusion

REI's failure to record the Mortgagee's Deed prior to the imposition of the stay results in an incomplete foreclosure process. Accordingly, the property was not "sold," and the debtor had

the right to treat her homestead in her plan pursuant to section 1322(c). REI's interest, however, in the property by virtue of its delivered but unrecorded Mortgagee's Deed is not adequately protected. Accordingly, pursuant to section 362(d), the automatic stay is terminated, and REI may proceed with recording the Mortgagee's Deed and take such further steps as are necessary to complete the foreclosure process and take possession of the property.

IT IS SO ORDERED.

Dated this 30th day of April, 2020.

HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc: Marie King
Doug Lickert
James McPherson
David Tyler Mills
Joyce Bradley Babin
All other parties in interest